**LaMONICA HERBST & MANISCALCO, LLP**
*Special Litigation Counsel to Plaintiff R. Kenneth Barnard, as Trustee*
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500
Joseph S. Maniscalco, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------x
In re:

GREGORY N. ALTIERI d/b/a
LNA ASSOCIATES LTD.,

Debtor.

-------------------------------------------------------------------------------x
R. KENNETH BARNARD, Solely in his Capacity as Chapter 7
Trustee of the Estate of Gregory N. Altieri d/b/a LNA
Associates Ltd.,

Plaintiff,

    -against-

MARCELLA & BREANNA, LLC, KENNETH BOYCE,
CATHERINE M. BOYCE A/K/A CATERINA M. BOYCE,
KENNY'S PLUMBING & HEATING, INC.,
SILVERMANACAMPORA LLP (as a stakeholder of property of the
estate), ROBERT SHANAHAN, ESQ. (as a stakeholder of property
of the estate), FIDELITY INVESTMENTS, J.P. MORGAN CHASE
BANK, N.A., BANK OF AMERICA, N.A., BETHPAGE FEDERAL
CREDIT UNION, WAYNE ROMANO, DAVID VITERI, ROBERT
PICCIURRO, ANTONIO PICCIURRO, FRATELLI FINE ITALIAN
FOODS, INC. D/B/A CRAVINS DELI, FRANK EVANGELISTA,
STEPHEN ROSSANO, ABLE PLUMBING & HEATING INC.,
JOSEPH MINOGUE, DOMENICO CARUSO, SON AND
FATHERS LANCELOTTI, AMERICAN DREAM HOME
IMPROVEMENT, BRIGETTE MORALES, TODD MEDEIROS, 79
BAYVIEW REALTY CORP., THOMAS BERTORELLO, JOHN
DOE "1" THROUGH "20", JANE DOE "1" THROUGH "20",
JOHN DOE CORPORATIONS "1" THROUGH "20", OTHER
JOHN DOE ENTITIES "1" THROUGH "20", ALONG WITH ANY
PROFESSIONAL, ATTORNEY, ACCOUNTANT, OR ANY
OTHER FICTITIOUS ENTITY THAT RECEIVED  ANY PART OF
THE TOTAL TRANSFERS OF PROPERTY OF THE ESTATE, OR
IS HOLDING PROPERTY OF THE ESTATE,

Defendants.

-------------------------------------------------------------------------------x

Chapter 7

Case No.: 20-71951 (REG)

Adv. Pro. No.: 21-    (REG)

**COMPLAINT**

Plaintiff R. Kenneth Barnard, solely in his capacity as Chapter 7 Trustee ("Plaintiff" or "Trustee") of the estate of Gregory N. Altieri d/b/a LNA Associates Ltd. ("Debtor"), by his undersigned special litigation counsel, as and for his Complaint against defendants Marcella & Breanna, LLC ("MBLLC"), Kenneth Boyce ("Boyce"), Catherine M. Boyce a/k/a Caterina M. Boyce ("Caterina"), Kenny's Plumbing & Heating, Inc. ("Kenny's Plumbing" and, together with MBLLC, Boyce and Caterina, "Boyce Defendants"), SilvermanAcampora LLP (as a stakeholder of property of the estate) ("Silverman Firm"), Robert Shanahan, Esq.[1] (as a stakeholder of property of the estate), Fidelity Investments, J.P. Morgan Chase Bank, N.A., Bank of America, N.A., Bethpage Federal Credit Union, Wayne Romano, David Viteri, Robert Picciurro, Antonio Picciurro, Fratelli Fine Italian Foods, Inc. d/b/a Cravins Deli, Frank Evangelista, Stephen Rossano, Able Plumbing & Heating Inc., Joseph Minogue, Domenico Caruso, Son And Fathers Lancelotti, American Dream Home Improvement, Brigette Morales, Todd Medeiros, 79 Bayview Realty Corp., Thomas Bertorello[2] (collectively, "Defendants"), together with John Doe "1" through "20", Jane Doe "1" through "20", John Doe Corporations "1" through "20", Other John Doe Entities "1" through "20", along with any professional, attorney, accountant, or any other fictitious entity that received any part of the total transfers of property of the estate, or is holding property of the estate (collectively, "Unnamed Defendants"), alleges as follows:

## Nature of the Proceeding

1.       This adversary proceeding is brought by the Trustee to, inter alia, (i) avoid the initial transfers from the Debtor to defendant MBLLC as a fraudulent conveyance which

---

[1]       The Trustee does not seek affirmative relief for damages against SilvermanAcampora, LLP or Robert Shanahan, Esq.

[2]       The following defendants Wayne Romano, David Viteri, Robert Picciurro, Antonio Picciurro, Fratelli Fine Italian Foods, Inc. d/b/a Cravins Deli, Frank Evangelista, Stephen Rossano, Able Plumbing & Heating Inc., Joseph Minogue, Domenico Caruso, Son And Fathers Lancelotti, American Dream Home Improvement, Brigette Morales, Todd Medeiros, 79 Bayview Realty Corp., Thomas Bertorello are hereinafter the "MBLLC Defendants".

occurred in connection with a Ponzi scheme and to collapse the transactions as MBLLC was a mere conduit to all Defendants; (ii) avoid and recover both the Immediate and Mediate Transfers (defined below) and other transfers made by defendant MBLLC to the Boyce Defendants, the Other Defendants, and the Unnamed Defendants (all defined *infra*); and (iii) recover damages relating to the failure of all Defendants to repay the MBLLC Transfers and the Immediate or Mediate Transfers  (as defined *infra*).

2.      The Trustee seeks immediate injunctive relief as he just learned that counsel for the Boyce Defendants was secretly selling assets and negotiating a settlement with the Trustee at the same time. Some assets have already been sold in violation of the doctrine of good faith and fair dealing. Kenneth Boyce has been involved in almost $10 Million Dollars of transactions with the Debtor along with hundreds of thousands in cash transactions.  Under the guise of good faith and fair dealing, the Boyce Defendants counsel worked with the Trustee over the last four (4) months cajoling him under the guise of professionalism and cooperation, while at the same time, the Boyce Defendants were selling assets that were purchased using stolen funds from the Debtor.

3.      Defendant Kenneth Boyce engaged in a massive fraud on his own and, upon information and belief, based on the books and records, operated his own independent Ponzi scheme.  The damages the Trustee seeks against the Boyce Defendants includes punitive damages in the amount of $2,000,000 due to the intentional fraudulent conduct during their fraudulent activity and their use of the Debtor as their instrument without the Debtor's knowledge.

4.    This action relates to the real properties known as and located at 200 Ocean Crest Drive, Palm Coast, Florida – Units 332, 335 and 732, including all improvements and appurtenances thereto (collectively, the "Florida Properties").

5.    This action relates to the real property known as and located at 160 Manetto Hill Road, Huntington, New York 11743, including all improvements and appurtenances thereto (the "Huntington Property").

6.    This action relates to all money in the escrow account of SilvermanAcampora LLP (the "Silverman RE Escrow").

7.    This action relates to all money in the escrow account of Robert Shanahan, Esq. (the "Shanahan Escrow").

8.    This action relates to all money in the Fidelity Investment account (the "Fidelity Account").

9.    This action relates to hundreds of thousands of dollars in cash [U.S. Currency] and restraint of safe deposit boxes.

10.    The Boyce Defendants have failed to fully cooperate with the Trustee and turn over documents.

11.    The Trustee made requests of the Boyce Defendants to turn over documents for almost four (4) months. Despite repeated demand, and assurances that the documents are forth coming, the Boyce Defendants have not turned over crucial documents to the Trustee, and have sold assets under the guise of cooperation.

12.    Defendant Kenneth Boyce and MBLLC pled the Fifth Amendment at his Rule 2004 examination.

13.     In connection with this case, the Trustee seeks important injunctive relief to prevent the Boyce Defendants from further selling, transferring or hypothecating their assts beyond the reach of creditors.  Several pieces of real property are currently for sale by the Boyce Defendants and they have access to hundreds of thousands of dollars in brokerage accounts which all can be clearly traced to the Transfers identified herein.

14.     The Boyce Defendants intend to sell their assets and move to the State of Florida.

15.     Kenneth Boyce was intricately involved in the Debtor's financial transactions during the relevant time period.  He invested personally with his wife, the defendant Caterina. He invested through his plumbing company, defendant Kenny's Plumbing, and then he became bold and audacious and started MBLLC whereby he managed, controlled and operated his own Ponzi scheme taking money from the Boyce Defendants and investing it with the Debtor.

16.     MBLLC is a mere conduit to the Boyce Defendant and was a flow through entity for the Total Transfers.

17.     As a result of the fraudulent scheme, the foregoing transactions between the Debtor and the Boyce Defendants should be collapsed and each of the Defendants should be deemed to be initial transferees of the Total Transfers, or entities for whose benefit the Fraudulent Transfers were made, pursuant to Bankruptcy Code section 550(a)(1).

18.     Alternatively, if the Defendants are held not to be the initial transferees or beneficiaries under Bankruptcy Code section 550(a)(1), then each of the Defendants are immediate or mediate transferees under Bankruptcy Code section 550(a)(2).

19.     Boyce has been a plumber his entire life earning, on average, less than $75,000 per year.

20.     Defendant Caterina is a housewife and does not contribute financially to the household income.

21.     Defendant Caterina knew or should have known about the substantial changes in her lifestyle.

22.     The Boyce Defendants should be restored to their financial position before they met the Debtor.

23.     The Debtor did not have knowledge of the financial web that Boyce created for himself or for several of the Boyce Defendants he involved.

24.     As set forth more fully herein, Boyce systematically engaged in a massive fraud using other people's money and then purchased significant assets with it, including renovating his personal residence, paying off his mortgage, purchasing properties in Florida, withdrawing large sums of cash from his bank accounts, gambling the money, buying and selling stocks and other lavish lifestyle purchases.

25.     Despite repeated demand, Boyce has failed to turn over the millions of dollars in transfers that he and his wife Caterina have received as a conduit to the Debtor's Ponzi scheme. Every dollar the Boyce Defendants purportedly "earned," and every dollar they kept to unjustly enrich themselves, was derived from money taken from defrauded investors, both through the Debtor and through Boyce's maneuvering of MBLLC.

26.     Every asset the Boyce Defendants own that originated from the purported operation of MBLLC was drawn from fictitious profits and never earned and must be returned to the Trustee for distribution to the creditors of the estate.

27.     Based on the Trustee's investigation to date, the Boyce Defendants had knowledge of the Debtor's fraud, and ignored many of the "red flags" indicating the likelihood

of that fraud. They ignored the "red flags" using plausible deniability and conscious avoidance knowledge.

28.     The Boyce Defendants did not properly, independently, and reasonably investigate or perform any due diligence into the Debtor's business practices. The Boyce Defendants did exactly the opposite, they remained ignorant.

29.     According to the Debtor, Boyce would routinely threaten him with connections to local gangs unless the Debtor provided him with exorbitant profits and cash [U.S. Currency].

30.     A review of the financial records of MBLLC reveals a pattern of consistent weekly payments over a period of almost ten weeks made by the Debtor to MBLLC as a protective payment to avoid physical harm to the Debtor.  Those payments were then withdrawn by Boyce personally.

## Jurisdiction and Venue

31.     The statutory predicates for the relief sought herein include 11 U.S.C. §§ 105(a), 323, 502, 541, 542 and 548, 550 and 551 ("Bankruptcy Code"), 28 U.S.C. § 2201, Rules 6009, 7001, and 7065 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), section 276-a of New York Debtor and Creditor Law ("DCL"),[3] New York Limited Liability Law and any common law, rule, regulation and/or any applicable law of any other jurisdiction in which assets that are property of the estate currently unknown to Plaintiff are located.

32.     This action arises under the Debtor's pending Chapter 7 bankruptcy case.

---

[3]     On December 6, 2019, New York State enacted the "*Uniform Voidable Transactions Act*," which repealed and replaced certain provisions relating to fraudulent conveyances (L 2019, ch 580, eff. Apr. 4, 2020). The new provisions, however, do "not apply to a transfer made or obligation incurred before" the effective date of April 4, 2020 (id., § 7). The transfers at issue in this adversary proceeding were each made prior to April 4, 2020 and, accordingly, are subject to avoidance and recovery under former Article 10 of the Debtor and Creditor Law.

33.    This Court has jurisdiction over this action under 28 U.S.C. §§ 157 and 1334, and Bankruptcy Rules 6009, 7001 and 7065.

34.    This action is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1), (b)(2)(A), (b)(2)(B), (b)(2)(E), (b)(2)(H) and (b)(2)(O).

35.    Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

36.    Plaintiff consents to the entry of final orders and judgments by the Bankruptcy Judge presiding over this adversary proceeding if it is determined that the Bankruptcy Judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

## The Parties

37.    Plaintiff is the duly appointed Chapter 7 Trustee of the Debtor's bankruptcy estate.

38.    Plaintiff is authorized to file this action under section 323 of the Bankruptcy Code and Bankruptcy Rule 6009.

39.    Defendant Marcella & Breanna, LLC is a New York limited liability company organized under the laws of the State of New York with an address at 160 Manetto Hill Road, Huntington, New York 11743.

40.    Marcella & Breanna, LLC[4] was organized on December 29, 2017 and started doing business on March 1, 2018.

41.    Defendant Kenneth Boyce (hereinafter, "Kenneth", "Boyce" or "Kenneth Boyce") is an individual residing in the State of New York with an address 160 Manetto Hill Road, Huntington, New York 11743.

---

[4]    This entity is named after Boyce's children.

42.     Defendant Catherine M. Boyce a/k/a Caterina M. Boyce ("Caterina" or "Caterina Boyce") is an individual residing in the State of New York with an address 160 Manetto Hill Road, Huntington, New York 11743.

43.     Defendant Kenny's Plumbing & Heating, Inc. is a corporation organized under the laws of the State of New York with a last known address at 160 Manetto Hill Road, Huntington, New York 11743.[5]

44.     Defendant SilvermanAcampora LLC (as a stakeholder of property of the estate) is a law firm and a partnership under the laws of the state of New York.  The Trustee does not seek affirmative relief for damages against the Silverman Firm, but rather as a stakeholder of assets of the estate.

45.     Defendant Robert Shanahan, Esq. (as a stakeholder of property of the estate) is a law firm and a partnership under the laws of the state of New York.  The Trustee does not seek affirmative relief for damages against Robert Shanahan, Esq., but rather as a stakeholder of assets of the estate.

46.     Defendant Fidelity Investments is a national banking chartered brokerage institution with an address at Attention: Legal Operations, 100 Crosby Pkwy, KC1D, Covington, Kentucky 41015-0031.

47.     Defendant Fidelity Investments is a federally chartered banking institution with an address at Attention: Legal Operations, 100 Crosby Pkwy, KC1D, Covington, KY 41015-0031.

48.     Defendant J.P. Morgan Chase Bank, N.A. is a federally chartered banking institution  with an  address at 115 Broadhollow Road, Melville, New York 11747.

---

[5]     Kenneth Boyce, Caterina Boyce and Kenny's Plumbing shall collectively be referred to as the "Boyce Defendants".

49.     Defendant Bank of America, N.A. is a federally chartered banking institution with an address at 2020 Merrick Road, Merrick, New York 11566.[6]

50.     Defendant Bethpage Federal Credit Union is a federally chartered credit union with an address at 899 S. Oyster Bay Road, Bethpage, New York 11714.

51.     Defendant Wayne Romano is an individual residing in the State of New York with an address at 145 Jericho Turnpike, Old Westbury, New York 11568.

52.     Defendant David Viteri is an individual residing in the State of New York with an address at 5 Hillcrest Lane, Woodbury, New York 11797.

53.     Defendant Robert Picciurro is an individual residing in the State of New York with an address at 16 Hofstra Court, Plainview, New York 11803.

54.     Defendant Antonio Picciurro is an individual residing in the State of New York with an address at 46 Ridge Drive, Plainview, New York 11803.

55.     Defendant Fratelli Fine Italian Foods, Inc. d/b/a Cravins Deli is a corporation organized under the laws of the State of New York with a last known address at 1161 Old Country Road, Plainview, New York 11803.

56.     Defendant Frank Evangelista is an individual residing in the State of New York.

57.     Defendant Stephen Rossano is an individual residing in the State of New York with an address at 500 Peconic Street, Apt. 105B, Ronkonkoma, New York 11779.

58.     Defendant Able Plumbing & Heating Inc. is a company with an address at 1 Frederick Place, Hicksville, NY 11803.

59.     Defendant Joseph Minogue is an individual residing in the State of New York with an address at 206 10th Street, Bethpage, New York 11714.

---

[6]     The Trustee does not seek affirmative relief against Fidelity, Chase, Bank of America or Bethpage FCU but rather a restraint on assets they are holding, including safe deposit boxes.

60.     Defendant Domenico Caruso is an individual residing in the State of New York with an address at 39-87 Wolkow Avenue, Seaford, New York 11783.

61.     Defendant Son and Fathers Lancelotti are individuals residing in the State of New York.

62.     Defendant American Dream Home Improvement is a corporation organized under the laws of the State of New York and conducting business in New York.

63.     Defendant Brigette Morales is an individual residing in the State of New York with an address at 1356 W. Boxwood Drive, Hewlett Harbor, New York 11557.

64.     Defendant Todd Medeiros is an individual residing in the State of New York with an address at 3863 Hickory Street, Seaford, New York 11783.

65.     Defendant 79 Bayview Realty Corp. is a corporation organized under the laws of the State of New York with a last known address at 79 Hempstead Gardens Drive, West Hempstead, New York 11552.

66.     Defendant Thomas Bertorello is an individual residing in the State of New York.

67.     Upon information and belief, several attorneys, accountants and other professionals are in possession of or were paid using stolen funds.

68.     The Unnamed Defendants are those currently unknown beneficiaries, and/or additional or immediate or mediate transferees of any part of the Total Transfers (as defined below), individuals or entities holding property of the Debtor's bankruptcy estate, as well as any other individual or entity who conspired with one or more of the Defendants to defraud Debtor's creditors and/or received any part of the Total Transfers.

## ALLEGATIONS APPLICABLE TO ALL CLAIMS FOR RELIEF

69.    Pursuant to 11 U.S.C. § 704(a)(1), the Trustee must, inter alia, "investigate the financial affairs of the debtor" and "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest".

70.    In furtherance of his efforts to collect and reduce to money the property of the estate, the Trustee is pursuing numerous claims against individuals and entities to recover or "claw back" voidable or fraudulent transfers of money or property made by the Debtor in furtherance of the Debtor's operation of a fraudulent scheme.

71.    The Trustee seeks to avoid both the transfers made from the Debtor to MBLLC as an initial or immediate transfer, and the transfers from MBLLC to the Boyce Defendants and the MBLLC Defendants as immediate or mediate transferees.

72.    MBLLC acted as a mere conduit to the Boyce Defendants and the MBLLC Defendants.

73.    The Trustee seeks to collapse the MBLLC transactions since those transactions acted as mere conduits to the investments with the Debtor and the fraud the Boyce Defendants engaged in with the Debtor.

74.    The Trustee relies upon the broad authority granted by 11 U.S.C. §§544, 548, 550 and 551, to pursue recovery for the benefit of the estate and its creditors.

75.    The Boyce Defendants have consistently failed to cooperate with the Trustee or properly turn over documents requested under this Court's Rule 2004 order or Subpoenas issued upon them.

A.    **The Debtor's Fraudulent Scheme**

76.    For years prior to the Filing Date, the Debtor engaged in a scheme whereby he sought money from individuals or entities, in the form of loans or investments ("Investors"), for the purported purpose of purchasing lots of jewelry ("Jewelry Lot Sheets") by and through his d/b/a, LNA Associates Ltd. ("LNA") (the "Ponzi Scheme").

77.    Based on the Trustee's investigation, and at all times relevant hereto, the Debtor engaged in the Ponzi Scheme to defraud Investors and obtain money from those Investors by means of materially false and fraudulent statements, pretenses, and representations involving the purchase and sale of Jewelry Lot Sheets.

78.    Based on the Trustee's investigation, and at all times relevant hereto, people and entities lent money to, or invested money in the Ponzi Scheme in reliance upon the Debtor's materially false and fraudulent statements, pretenses, and representations.

79.    Based on the Trustee's investigation, and at all times relevant hereto, to further and continue the Ponzi Scheme, the Debtor repeatedly and knowingly solicited investments, and used money obtained from new investors to fund the payments made to previous investors, and to enrich himself and others.

80.    Based on the Trustee's investigation, and at all times relevant hereto, the Debtor repeatedly and knowingly solicited investments, and used money obtained from new investors to continue operations, pay earlier investors, make other transfers, and to otherwise perpetuate and continue the Ponzi Scheme.

81.    Based on the Trustee's investigation, and at all times relevant hereto, investors were promised returns which ranged from as low as 30% per year to as high as 450% percent per year.

82.    Based on the Trustee's investigation, and at all times relevant hereto, the payments to individuals constituted intentional misrepresentations of fact regarding the underlying loans and were an integral and essential part of the fraud.

83.    Based on the Trustee's investigation, and at all times relevant hereto, the continued payments to Investors allowed the Ponzi Scheme to continue to operate undetected, and to thereby retain existing money received from previous Investors and to continue to lure new Investors into the Ponzi Scheme.

84.    Based on the Trustee's investigation, and at all times relevant hereto, the Ponzi Scheme continued until such time that the repayment due to earlier Investors overwhelmed the flow of new money received from new Investors, causing the collapse of the Ponzi Scheme.

85.    During the four-year period prior to the bankruptcy filing, the Debtor had limited earned income and limited sources of cash aside from money solicited and received from new or additional defrauded Investors.

86.    The Debtor did not maintain any legitimate business operations.

87.    Upon information and belief, the Boyce Defendants knew or should have known the Debtor did not have any legitimate business operations.

88.    Based on the Trustee's investigation, and at all times relevant hereto, the Debtor had liabilities which exceeded his assets.

89.    Upon information and belief, the Debtor never had a substantial business operation and did not purchase jewelry under the Jewelry Lot Sheets as contemplated by the agreements with Defendants.

90.    During the time period of the MBLLC Transfers (as defined below) from January 1, 2018 to the Filing Date (the "MBLLC Time Period"), based on the Trustee's investigation and

a review of the Debtor's records, which is still continuing, the Debtor never purchased any wholesale jewelry, jewelry in bulk or large lots of jewelry for the purpose of repaying investors in connection with MBLLC transactions.

**B.      The Bankruptcy Filing, Appointment of the Trustee and Denial of Discharge**

91.      On April 28, 2020 ("Filing Date"), an involuntary petition ("Involuntary Petition") for relief pursuant to Chapter 7 of the Bankruptcy Code was filed against the Debtor. See Bankr. ECF[7] No. 1.

92.      On April 29, 2020, the Clerk of the Court issued a Summons to Debtor in Involuntary Case ("Summons"). See Bankr. ECF No. 2. On that same date, the Involuntary Petition and Summons were served on, inter alia, the Debtor. See Bankr. ECF No. 3.

93.      As a result of a motion filed on May 1, 2020, on May 6, 2020, the Court entered an Order, inter alia: (a) granting relief under Chapter 7 of the Bankruptcy Code against the Debtor; and (b) directing the appointment of a Chapter 7 Trustee for the Debtor. See Bankr. ECF No. 12.

94.      On May 6, 2020, Plaintiff was appointed as Chapter 7 Trustee of the Debtor's bankruptcy estate. See Bankr. ECF No. 13.

95.      Pursuant to a Stipulation and Order dated August 10, 2020, the Debtor's discharge under section 727 of the Bankruptcy Code was denied. See Bankr. ECF No. 67.

**C.      The Criminal Case Against the Debtor and the Debtor's Plea of Guilty**

96.      On July 9, 2020, the United States of America filed a sealed indictment against the Debtor in the United States District Court for the Eastern District of New York ("District

---

[7]      References to "Bankr. ECF" shall mean docket entries in the Debtor's Chapter 7 case (Case No. 20-71951 (REG)).

Court"). <u>See</u>, <u>generally</u>, <u>USA v. Altieri</u>, E.D.N.Y. Case No.: 1:20-cr-00249-BMC-1. By Amended Order dated July 14, 2020, the indictment was unsealed. <u>See</u> DC ECF[8] No. 3.

97.    The indictment accused the Debtor of fraudulently persuading more than 80 individuals and entities to make investments totaling between approximately $75 million and $85 million. <u>See</u> DC ECF No. 1.

98.    The indictment accused the Debtor of fraudulently telling investors that LNA generated profits by purchasing jewelry in bulk at "closeout" prices and then reselling that jewelry at higher prices, and promising that investments would be used only for this purpose. <u>See</u> DC ECF No. 1.

99.    The indictment claimed that the Debtor did not invest all of the investors' money in jewelry purchases by LNA and that most of the purchases the Debtor claimed were made by LNA were never made at all. <u>See</u> DC ECF No. 1.

100.    The indictment claimed that LNA did not generate the profits that the Debtor claimed, and most of the money paid by the Debtor to certain investors as a "return" on their investment did not represent purchases and sales of jewelry. <u>See</u> DC ECF No. 1.

101.    The indictment accused the Debtor of using money from some investors to pay other investors. <u>See</u> DC ECF No. 1.

102.    On December 30, 2020, the Debtor pled guilty to Count I in the indictment.

103.    The Debtor admitted to operating a Ponzi scheme.

104.    At his plea hearing, the Debtor admitted that he did not purchase any jewelry in connection with his transactions with Defendants.

105.    As of the date of this Complaint, the Debtor has not been sentenced.

---

[8]    References to "DC ECF" shall mean docket entries in the criminal case against the Debtor, <u>i.e.</u>, <u>USA v. Altieri</u>, E.D.N.Y. Case No.: 1:20-cr-00249-BMC-1.

**D.**    <u>**MBLLC's Failed Document Production and Fifth Amendment Plea**</u>

106.    On July 17, 2020, in accordance with a Rule 2004 Order signed by the Honorable Robert E. Grossman, Trustee's counsel served Marcella & Brenna, LLC by Kenny Boyce, as the authorized agent, with a Rule 2004 Subpoena and Order to produce documents in this case (the "<u>MBLLC Subpoena</u>").

107.    The MBLLC Subpoena called for the production of documents by July 27, 2020.

108.    On July 24, 2020, Kenneth P. Silverman, Esq. ("<u>Silverman</u>") contacted counsel to the Trustee indicating he was in the process of being retained by Kenneth Boyce and MBLLC and requested additional time to produce the documents.

109.    On July 30, 2020, Silverman emailed Trustee's counsel indicating that his client provided him with a few documents to review and that he would assemble the balance of the relevant documents within a week.

110.    On August 6, 2020, Silverman caused a partner at his firm, David Mahoney, Esq., to communicate with Trustee's counsel and asserted that "he finally met with Mr. Boyce on the evening of August 5, 2020 and he had provided a significant amount of material for production," and is in the process of requesting additional documents from his bank.

111.    On August 6, 2020, Mr. Mahoney represented that the documents would be provided the following week, or August 13, 2020.

112.    On August 11, 2020, Mr. Mahoney requested additional time for production as he was dealing with a family emergency.

113.    On September 1, 2020, Silverman spoke to Trustee's counsel and represented that the documents would be produced no later than Thursday or Friday of that week.

114.    On September 3, 2020, since Silverman again failed to honor the deadline he placed on the production, Trustee's counsel emailed him outlining the deficiencies and requested that the documents be produced no later than Tuesday, September 8, 2020, or the Trustee would seek judicial intervention.

115.    On September 7, 2020, Silverman finally turned over an initial tranche of documents related to MBLLC.

116.    A review of the initial production revealed that Silverman, or the Boyce Defendants, were in possession of the documents from as early as August 3, 2020, yet failed to turn them over to the Trustee.

117.    Despite repeated demand, MBLLC has failed to comply with the MBLLC Subpoena and turn over the balance of documents.

118.    On November 4, 2020, the Trustee examined Boyce and MBLLC under a Rule 2004 Order and Subpoena.

119.    On November 4, 2020, Boyce and MBLLC pled the Fifth Amendment.

120.    The Trustee continued to request documents from MBLLC during the month of December and January 2020.

121.    During each conversation or written communication, Silverman continuously represented to the Trustee and his counsel that "the Trustee is entitled to the documents and they will be provided soon".  This went on with Silverman for a period of almost four (4) months.

122.    During the communications, Silverman advised the Trustee that Kenneth Boyce and Caterina had only one bank account and that they would produce bank statements related to that bank account.

**E.**    **Kenneth Boyce Failed to Comply with His Subpoena**

123.    On January 28, 2021, the Trustee served a subpoena on Kenneth Boyce individually under the Rule 2004 Order ("Kenneth Subpoena").

124.    Defendant Kenneth Boyce failed to comply with the Kenneth Subpoena.

125.    On February 12, 2021, the Trustee provided a notice of default under the Kenneth Subpoena to Boyce and provided an opportunity to purge the default if the documents were turned over by February19, 2021.

126.    On February 19, 2021, the Silverman Firm, on behalf of Kenneth Boyce, responded to the Kenneth Subpoena and produced limited documents.

127.    On February 25, 2021, Trustee's counsel advised the Silverman Firm that the response to the Kenneth Subpoena was deficient and that Boyce has failed to comply with the Kenneth Subpoena.  As of the date hereof, Boyce has not complied with the Kenneth Subpoena.

128.    The Silverman Firm repeatedly advised the Trustee that he was entitled to the documents and that they would be turned over shortly.

**F.**    **Caterina Boyce Failed to Comply with Her Subpoena**

129.    On January 28, 2021, the Trustee served a subpoena on Caterina Boyce individually under the Rule 2004 Order (the "Caterina Subpoena").

130.    Defendant Caterina Boyce failed to comply with the Caterina Subpoena.

131.    On February 12, 2021, the Trustee provided a notice of default under the Caterina Subpoena to Caterina and provided an opportunity to purge the default if the documents were turned over by February19, 2021.

132.    On February 19, 2021, the Silverman Firm, on behalf of Caterina Boyce, responded to the Caterina Subpoena and produced limited documents.

133.    On February 25, 2021, Trustee's counsel advised the Silverman Firm that the response to the Caterina Subpoena was deficient and that Caterina has failed to comply with the Caterina Subpoena.  As of the date hereof, Caterina Boyce has not complied with the Caterina Subpoena.

134.    The Silverman Firm repeatedly advised the Trustee that he was entitled to the documents and that they would be turned over shortly.

G.    **Background of MBLLC's Business and the Boyce Defendants**

135.    The Defendant MBLLC was controlled, directed and managed by the Boyce Defendants, specifically Kenneth Boyce.

136.    Defendant MBLLC was owned by Kenneth Boyce and named after his children.

137.    Boyce operated MBLLC after already being involved with the Debtor as an individual investor with his wife Caterina.

138.    Boyce invested with the Debtor under his company, defendant Kenny's Plumbing.

139.    Boyce used MBLLC to solicit investors to invest in the Debtor through MBLLC.

140.    Some investors agreed to invest in the Debtor through Boyce individually, and also through MBLLC.

141.    Defendant Boyce was smart, calculating and intuitive as he figured a way to earn money through investments made by the MBLLC Defendants to MBLLC by using other people's money ("OPM").

142.    Defendant Boyce used OPM to create fictitious profits and then selectively returned those profits to the MBLLC Defendants.

143.    Boyce selectively decided how much profit to return to the MBLLC Defendants.

144.    Boyce did not provide any documentation to the MBLLC Defendants.

145.    The MBLLC Defendants trusted the Boyce Defendants and did not require documentation regarding their investments.

146.    Based on the banking activity, defendant Boyce was running a separate Ponzi scheme using the Debtor and the stolen money the Debtor obtained from other investors.

147.    The Boyce Defendants knew or should have known that they were deceiving the MBLLC Defendants by the manner in which they described or represented the investments with the Debtor.

148.    Boyce used OPM to invest with the Debtor and made his own profits personally from OPM without telling the MBLLC Defendants.[9]

149.    Defendant Kenneth was the direct line of communication to the people investing in the Debtor through MBLLC.

150.    Defendant MBLLC was a mere conduit of the Boyce Defendants.

151.    Defendant MBLLC did not have an operating agreement.

152.    Defendant MBLLC did not maintain books and records.

153.    Defendant MBLLC did not maintain any minutes of meetings.

154.    Defendant Kenneth did not look into the Debtor's business dealings and was involved since inception.

155.    Defendant Kenneth did not engage in any due diligence regarding the Debtor.

156.    The Boyce Defendants did not ask the Debtor for accounts receivable ledgers, inventory listings, proof of purchase, proof of delivery, purchase orders or anything else related to the investments into the Debtor.

---

[9]    Based on the available MBLLC bank records, it appears that Boyce never invested his own money into MBLLC yet paid himself <u>$2,380,700</u> from the MBLLC profits received from the Debtor.

157.    As long as the excessive return on investment was made, the Boyce Defendants did not care what the Debtor was doing in order to provide that type of investment return.

158.    The Boyce Defendants knew or should have known the investments with the Debtor were not realistic.

159.    None of the Boyce Defendants ever asked for backup documents.

160.    None of the Boyce Defendants asked for inventory controls.

161.    None of the Boyce Defendants ever asked for purchase orders or to speak to anyone the Debtor was allegedly buying the jewelry from in any way.

162.    The Boyce Defendants never asked the Debtor for tax returns financial documents, profit and loss statements, balance sheet or any other documents to justify their investments.

163.    All Defendants are sophisticated investors and business people with extensive business experience and backgrounds.

### The Flow of Money Transfers



164.    The Boyce Defendants were not victims of the Debtor's fraud but instruments of the Debtor's fraud, and took advantage of the fraud and OPM to earn fictitious profits.

165.    The Debtor did not have any knowledge of the business transactions or behavior of the Boyce Defendants, including Ken Boyce.

166.    Defendant Kenneth controlled all of the decisions of MBLLC.

167.    The Debtor did not have any knowledge of the inner workings of Boyce and MBLLC.

168.    Defendant MBLLC had no legitimate business operations and was used as a mere instrumentality of the Debtor's fraud.

169.    MBLLC operated from March 2018 until January 2020.

170.    Any money left in the bank account of MBLLC was paid over to defendant Kenneth after the Debtor stopped paying MBLLC.

**H.    <u>MBLLC Had No Legitimate Business Operations</u>**

171.    MBLLC had no legitimate business operations.

172.    MBLLC acted as a mere conduit to the MBLLC Defendants.

173.    MBLLC acted as a mere conduit to the Boyce Defendants.

174.    Boyce used OPM to fund the MBLLC's investments with the Debtor.

175.    MBLLC never maintained any separate corporate existence.

176.    Defendant Kenneth acted as agent for defendant MBLLC in connection with the financial transactions with the Debtor.

177.    MBLLC had no separate corporate existence.

178.    Upon information and belief, defendant Kenneth caused and/or directed the transfers of assets of defendant MBLLC to whom he chose to conceal his fraud.

179.    MBLLC never maintained any corporate formality or treated defendant MBLLC as a separate and distinct corporate entity.

180.    At all times relevant hereto, defendant MBLLC was under-capitalized.

181.    At all times relevant hereto, defendant Kenneth engaged in excessive control over defendant MBLLC and used the corporate shell in order to further his own personal gain.

182.    At all times relevant hereto, defendant MBLLC did not pay rent, utilities, or other ordinary expenses of a company.

**I.    Nature of the Debtor's Operations**

183.    During the MBLLC Time Period, based on the Trustee's investigation and a review of the books and records, which is still ongoing, the Debtor did not purchase any wholesale lots of jewelry as represented to Defendants and others and did not conduct any legitimate business operations.

184.    During the MBLLC Time Period, based on the Trustee's investigation and a review of the books and records, which is still ongoing, the Debtor's sole activity was limited to the operation of the Ponzi Scheme described hereinabove.

185.    During the Debtor's plea agreement and confirmed by the Trustee based on his investigation, which is ongoing, there is no record of the Debtor having purchased any "jewelry lots" in connection with his representations.

186.    The Debtor was operating a Ponzi scheme and the Defendants knew or should have known.

187.    The Debtor did not have any knowledge of the Boyce Defendants activity, what they were doing with their business, or the manner in which it was operating.

188.    At all times relevant hereto, the Debtor had liabilities which exceeded his assets.

**J.    Boyce Personally Transferred $2,380,700 to Himself**

189.    Based on the facts and circumstances and the review of the books and records, testimony and behaviors of the various Defendants, defendant Boyce knew or should have known that he was involved in running a Ponzi scheme.

190.    Defendant Boyce transferred to himself from MBLLC the sum of $2,380,700 as follows:

| Check Date | Check No. | From | To | Amount |
|---|---|---|---|---|
| 7/12/2018 | 1031 | MBLLC | Kenneth Boyce | $    200,000.00 |
| 7/30/2018 | 1037 | MBLLC | Kenneth Boyce | $      25,000.00 |
| 8/4/2018 | 1038 | MBLLC | Kenneth Boyce | $      40,000.00 |
| 2/4/2019 | 1048 | MBLLC | Kenneth Boyce | $        9,500.00 |
| 3/19/2019 | 1054 | MBLLC | Kenneth Boyce | $      40,000.00 |
| 3/22/2019 | 1057 | MBLLC | Kenneth Boyce | $      80,000.00 |
| 4/17/2019 | 1067 | MBLLC | Kenneth Boyce | $        5,700.00 |
| 4/18/2019 | 1068 | MBLLC | Kenneth Boyce | $ 1,000,000.00 |
| 5/23/2019 | 1071 | MBLLC | Kenneth Boyce | $    680,000.00 |
| 7/23/2019 | 1074 | MBLLC | Kenneth Boyce | $    200,000.00 |
| 10/14/2019 | 1079 | MBLLC | Kenneth Boyce | $      35,000.00 |
| 10/28/2019 | 1080 | MBLLC | Kenneth Boyce | $      25,000.00 |
| 12/2/2019 | 1081 | MBLLC | Kenneth Boyce | $      20,000.00 |
| 12/18/2019 | 1082 | MBLLC | Kenneth Boyce | $      15,000.00 |
| 1/3/2020 | 1086 | MBLLC | Kenneth Boyce | $        5,500.00 |
| | | | **TOTAL:** | **$ 2,380,700.00** |

(collectively, the "Boyce Transfers").

191.    The Boyce Transfers are property of the estate.

192.    The Boyce Defendants exercised control over the Boyce Transfers.

193.    MBLLC never exercised control over the Boyce Transfers.

194.    Defendant Boyce directed control over the Boyce Transfers.

195.    The Boyce Transfers were derived from the Debtor.

196.    The Boyce Transfers were made by the Debtor to MBLLC at Boyce's direction.

197.    Defendant Boyce directed the Boyce Transfers to be paid to MBLLC as a mere conduit to the Boyce Defendants.

198.    The Boyce Transfers were used by Boyce to pay for real estate, his personal residence, credit cards, car loan payoffs, new roof, mortgage payoff, increasing his brokerage

account holdings at defendant Fidelity Investment, new front door, gambling extravaganzas, CASH [U.S. currency] withdrawals and other lifestyle purchases.

199.    Boyce made additional transfers from MBLLC directly to third parties that he received the direct benefit.

200.    Boyce made additional transfers directly to third parties for a roof on his home, front door, car loan payoffs and personal loans.

**K.    Avoiding the MBLLC Transfers From the Debtor**

201.    The Trustee seeks to avoid all transfers from the Debtor to MBLLC during the MBLLC Time Period.

202.    The Trustee seeks to collapse the transactions with MBLLC as the entity acted as a mere conduit to the Debtor.

203.    During the MBLLC Time Period, MBLLC received deposits from the Debtor in the net amount of $4,987,000.00, which money came from other creditors of the estate and fictitious loans they made to the Debtor (the "MBLLC Transfers").[10]

204.    The MBLLC Transfers to and from the Debtor are contained below.

| Date | Check No. | Payor | Payee | Deposit | Withdrawal |
|---|---|---|---|---|---|
| 2/9/2018 | DEP | LNA Associates Ltd. | MBLLC | $    80,000.00 | |
| 2/9/2018 | 6429 | MBLLC | LNA Associates Ltd. | | $    40,000.00 |
| 3/13/2018 | | LNA Associates Ltd. | MBLLC | $   348,000.00 | |
| 4/9/2018 | | LNA Associates Ltd. | MBLLC | $   176,000.00 | |
| 4/17/2018 | 1007 | MBLLC | LNA Associates Ltd. | | $   400,000.00 |
| 4/18/2018 | 1008 | MBLLC | LNA Associates Ltd. | | $   160,000.00 |
| 4/26/2018 | DEP | LNA Associates Ltd. | MBLLC | $   162,000.00 | |
| 4/26/2018 | DEP | LNA Associates Ltd. | MBLLC | $   627,000.00 | |
| 5/15/2018 | DEP | LNA Associates Ltd. | MBLLC | $   250,000.00 | |
| 5/17/2018 | 1019 | MBLLC | LNA Associates Ltd. | | $   125,000.00 |
| 5/24/2018 | DEP | LNA Associates Ltd. | MBLLC | $   409,000.00 | |
| 5/24/2018 | 1022 | MBLLC | LNA Associates Ltd. | | $   140,000.00 |
| 5/31/2018 | 1023 | MBLLC | LNA Associates Ltd. | | $   535,000.00 |

---

[10]    During the MBLLC Time Period, the Debtor transferred $7,492,000 to MBLLC and MBLLC transferred $2,505,000 to the Debtor for a net amount of $4,987,000 being owed to the Debtor's estate by the Defendants.

| Date | Check No. | Payor | Payee | Deposit | Withdrawal |
|---|---|---|---|---|---|
| 6/13/2018 | 1024 | MBLLC | LNA Associates Ltd. | | $    310,000.00 |
| 7/11/2018 | DEP | LNA Associates Ltd. | MBLLC | $    800,000.00 | |
| 7/11/2020 | DEP | LNA Associates Ltd. | MBLLC | $    155,000.00 | |
| 7/30/2018 | 1036 | MBLLC | LNA Associates Ltd. | | $    415,000.00 |
| 10/12/2018 | DEP | LNA Associates Ltd. | MBLLC | $    260,000.00 | |
| 11/10/2018 | DEP | LNA Associates Ltd. | MBLLC | $     75,000.00 | |
| 12/1/2018 | DEP | LNA Associates Ltd. | MBLLC | $     50,000.00 | |
| 3/1/2019 | DEP | LNA Associates Ltd. | MBLLC | $    700,000.00 | |
| 3/20/2019 | DEP | LNA Associates Ltd. | MBLLC | $    300,000.00 | |
| 4/16/2019 | DEP | LNA Associates Ltd. | MBLLC | $ 3,000,000.00 | |
| 5/1/2019 | 1070 | MBLLC | LNA Associates Ltd. | | $    300,000.00 |
| 7/22/2019 | 1072 | MBLLC | LNA Associates Ltd. | | $     80,000.00 |
| 9/24/2019 | DEP | LNA Associates Ltd. | MBLLC | $     20,000.00 | |
| 10/4/2019 | DEP | LNA Associates Ltd. | MBLLC | $     10,000.00 | |
| 10/18/2019 | DEP | LNA Associates Ltd. | MBLLC | $     10,000.00 | |
| 10/25/2019 | DEP | LNA Associates Ltd. | MBLLC | $     10,000.00 | |
| 11/1/2019 | DEP | LNA Associates Ltd. | MBLLC | $     10,000.00 | |
| 11/8/2019 | DEP | LNA Associates Ltd. | MBLLC | $     10,000.00 | |
| 11/20/2019 | DEP | LNA Associates Ltd. | MBLLC | $     10,000.00 | |
| 11/25/2019 | DEP | LNA Associates Ltd. | MBLLC | $     10,000.00 | |
| 11/27/2020 | DEP | LNA Associates Ltd. | MBLLC | $     10,000.00 | |
| | | **Total** | | **$ 7,492,000.00** | **$ 2,505,000.00** |
| | | **Net Loser (Debtor)** | | **$ 4,987,000.00** | |

205.    Defendant Kenneth Boyce used a substantial portion of the MBLLC Transfers to pay the Boyce Defendants.

206.    Defendant Kenneth Boyce used a portion of the MBLLC Transfers to pay other MBLLC Defendants.

207.    Defendant Kenneth Boyce exercised dominion and control over the Boyce Transfers.

208.    Defendant Boyce determined where the MBLLC Transfers would be delivered and kept a substantial portion for himself personally.

**L.    Kenneth Boyce Gets Caught by Some of the Investors**

209.    In or about the summer of 2019, Boyce was continually soliciting MBLLC Defendants on false promises.

210.    During the summer of 2019, Boyce was soliciting new fresh money to fund the MBLLC business enterprise.

211.    One day Boyce solicited the same investor that the Debtor solicited with a new jewelry lot sheet. The individual realized that the Debtor's return on investment was actually more than what Boyce was proposing.

212.    Boyce was caught by certain MBLLC investors as he previously represented he was using his own money.

213.    Boyce's representation to the solicited investor was false and misleading.

214.    Boyce realized he was caught with the investor and attempted to change the story as to what the investment return provided.

215.    Boyce used his telephone to communicate investment opportunities to the MBLLC Defendants and others.

216.    Boyce wrote text messages soliciting MBLLC Defendants and other investors.

217.    Boyce sent text messages soliciting MBLLC Defendants and other investors.

218.    Once Boyce was caught, many of the creditors of the Debtor's estate and investors knew what Boyce was doing.

219.    At this time, Boyce started to threaten the Debtor with his affiliation with MS-13 gang members and demanded the Debtor pay him money.[11]

220.    Once Boyce was caught, he substantially reduced payments to the MBLLC Defendants and instead paid himself.

221.    Despite the demand for the money, which the Debtor obliged, Boyce took that money for himself.

---

[11]    From September 24, 2019 to November 27, 2019, the Debtor paid Boyce through MBLLC $10,000 each week.

**M.     Defendant Kenneth Boyce Selectively Decided
        What Money to Pay to the Debtor and to Himself**

222.     Boyce decided what money to invest in the Debtor and what money he would use for himself.

223.     Below are snapshots of transactions from the bank records of MBLLC showing the behavior and activity of defendant Boyce

224.     On April 23, 2019, Rushmore Realty provided a deposit to MBLLC of $125,000.

225.     On April 29, 2019 David Viteri provided a deposit to MBLLC of $250,000.

226.     On April 30, 2019, Able Plumbing & Heating provided a deposit to MBLLC of $300,000.

227.     On May 1, 2019, defendant Boyce issued a check to the Debtor for $300,000 seeking a return of $495,000 on July 29, 2019.

228.     On May 23, 2019, defendant Boyce caused MBLLC to pay to defendant Boyce personally the sum of $680,000.

229.     There were no banking transactions between May 1, 2019 and May 23, 2019 other than as described above.

230.     The table below represents a reconstruction of the records of MBLLC based on its banking records, Boyce's handwritten notes in the check book ledger, and the financial transactions set forth therein.

| 4/23/2019 | DEP | Rushmore Realty | MBLLC | $125,000.00 | |
| 4/29/2019 | DEP | David Viteri | MBLLC | $250,000.00 | |
| 4/30/2019 | DEP | Able Plumbing & Heating Inc. | MBLLC | $300,000.00 | |
| 5/1/2019 | 1070 | MBLLC | LNA Associates Ltd. | | $300,000.00 |
| 5/23/2019 | 1071 | MBLLC | Kenneth Boyce | | $680,000.00 |

231.    In connection with the transactions in the prior three paragraph allegations, Boyce gave the Debtor the difference in cash [U.S. currency].

232.    According to the Debtor, he returned the profit back to Boyce on the above transactions in cash [U.S. currency].

233.    At times, Boyce would direct MBLLC Defendants to write the check to himself personally and not to MBLLC.

234.    Boyce directed MBLLC Defendants to cut checks to himself while he was operating MBLLC.

235.    Upon information and belief, the Boyce Defendants have transferred, conveyed or hypothecated the Boyce Transfers for the purpose of keeping them beyond the reach of the Trustee and the estate and their creditors.

236.    The Debtor received less than fair consideration or reasonably equivalent value in exchange for any of the Total Transfers to the Defendants.

237.    The Debtor had creditors holding unsecured claims against it at the time of the Total Transfers that continued to be creditors of the Debtor as of the Filing Date.

238.    To the extent that any of the avoidance and/or recovery claims may be inconsistent with each other, they are to be treated as being plead in the alternative.

**N.**    **The Boyce Defendants Use the Fraudulent Profits to Purchase Assets**

239.    The Boyce Defendants used the Boyce Transfers to purchase assets, including real estate located in Florida.

240.    The Boyce Defendants purchased the following three (3) condominiums in Florida valued at least at $200,000 each using the Boyce Transfers.

241.    The Boyce Defendants reside at 160 Manetto Hill Road, Huntington, NY (the

"<u>Huntington Property</u>").

242.    Defendant Boyce used the Boyce Transfers to pay the mortgage, utilities, renovations (door, roof) and all other expenses associated with the Huntington Property including paying off the mortgage.

243.    Boyce did not work full time as a plumber once he identified a way to steal money from the Debtor.

244.    On April 22, 2019, Boyce paid off the mortgage for the Huntington Property to Chase Mortgage in the amount of $428,315.74 (the "<u>Huntington Mortgage Payoff</u>").[12]

245.    The Huntington Mortgage Payoff amount can be traced to Boyce receiving money that he transferred from MBLLC which came from the Debtor.

246.    On or about March 20, 2021, Kenneth and Caterina entered into a contract to sell the Huntington Property to Jordan Stadler for $1,125,000 (the "<u>Huntington Contract</u>").

247.    The proceeds from the Huntington Contract are property of the estate.

248.    The Huntington Contract is property of the estate.

249.    The Huntington Property and all payments made to or for the benefit of the Huntington Property from 2017 to the present can be traced to the Boyce Transfers and the money Boyce stole from the Debtor.

250.    The Huntington Property is property of the estate and should be immediately seized and prevented from selling.

251.    The Boyce Defendants intend to liquidate their assets in New York and move to Florida.

252.    The Boyce Defendants are looking to move Florida.

---

[12]        The Chase mortgage was only in the name of Kenneth Boyce.

253.     Upon information and belief, the Boyce Defendants have already met with a real estate broker about moving to Florida.

254.     Boyce used money from the Boyce Transfers to pay off a car loan.

255.     Boyce used money from the Boyce Transfers to put on a new roof at the Huntington Property.

256.     Boyce used money from the Boyce Transfers to put on a new front door at the Huntington Property.

257.     Boyce used money from the Boyce Transfers to open a brokerage account at defendant Fidelity.

258.     Boyce opened a Fidelity account identified in his personal name as Account Y03-xx8626 which had a balance as of December 31, 2020 of $616,264.87 (the "Fidelity Account").

259.     Upon information and belief, the Fidelity Account was funded substantially, if not exclusively, through the Boyce Transfers and the money that Boyce stole from the Debtor.

260.     The Fidelity Account is property of the estate and should be immediately seized.

261.     During the MBLLC Time Period, the Boyce Defendants purchased real estate in Florida.

262.     The Boyce Defendants purchased Units 332, 335 and 732 located at 200 Ocean Crest Drive, Palm Coast, Florida (collectively, the "Florida Properties").

263.     The Florida Properties were purchased using money from the Boyce Transfers and the money Boyce stole from the Debtor.

264.     The Florida Properties are property of the estate.

265.     Defendant Boyce is attempting to sell the Florida Properties.

266.     The Florida Properties should be immediately seized.

267.    The Florida Properties purchases can be directly traced to money Boyce received from the Boyce Transfers and the money he stole from the Debtor.

268.    The Florida Properties are property of the estate.

269.    The Florida Properties should be immediately seized and prevented from being sold by the Boyce Defendants without a further order of the Court.

270.    But for the investments with the Debtor, the Boyce Defendants did not have the financial means necessary to purchase the Florida Properties.

271.    But for the investments with the Debtor, the Boyce Defendants did not have the financial means necessary to renovate the Huntington Property.

272.    But for the investments with the Debtor, the Boyce Defendants did not have the financial means necessary to pay off the Huntington Property mortgage.

273.    But for the investments with the Debtor, the Boyce Defendants did not have the financial means necessary to pay the normal household expenses, mortgages and utilities.

**O.**    **The Cash Deals and Transfers between Boyce and the Debtor**

274.    Based on the Trustee's investigation to date, defendant Boyce engaged in numerous Cash Deals with the Debtor (the "**Cash Deals**").

275.    The Cash Deals represented a higher profit margin with a shorter duration.

276.    Upon information and belief, according to the Debtor, defendant Boyce engaged in Cash Deals whereby his personal cash profits [U.S. currency] totaled up to $650,000 (the "**Cash Transfers**").

277.    According to the records of MBLLC and Boyce's own handwriting, he was engaged in Cash Transfers.

278.     According to Boyce's bank statements, he withdrew cash to invest with the Debtor.

279.     According to witness testimony and interviews, Boyce engaged in Cash Transfers.

280.     According to the Debtor, he met Boyce often and delivered extensive cash to him.

281.     According to the Debtor, Boyce demanded large amounts of cash [U.S. currency] from the Debtor.

282.     According to the Debtor and others, Boyce was involved in Cash Transfers [U.S.currency] from early on in 2017.

283.     According to the Debtor, he would meet Boyce at a local gas station, in a parking lot, or at the On Parade Diner and hand him envelopes of cash.

284.     According to the Debtor, each time he handed cash to Boyce, he told Boyce the amount of cash that was in the envelope.

285.     Boyce decided what money to invest in the Debtor and what money he would use for himself.

286.     According to the Trustee's investigation, Boyce handed certain individuals cash to deliver to the Debtor for cash transactions.

287.     According to the Trustee's investigation, Boyce was handed cash in return for his investments with the Debtor.

**P.**     **Boyce's Own Documents Provide Proof of His Cash Transactions**

288.     Below are snapshots of transactions from the bank records of MBLLC showing the behavior and activity of defendant Boyce.

289.     On April 16, 2018, David Viteri provided a deposit to MBLLC of $50,000.

290.     On April 16, 2018, David Viteri provided a deposit to MBLLC of $250,000.

291.     On April 16, 2018, Domenico Caruso provided a deposit to MBLLC of $60,000.

292.     On April 16, 2018, Robert Picciurro provided a deposit to MBLLC of $40,000.

293.     On April 17, 2018, defendant MBLLC issued a check to Debtor in the amount of $400,000 representing the money coming in from the above named MBLLC Defendants.

294.     There were no banking transactions between April 16, 2018 and April 17, 2018 other than as described above.

295.     The table below represents a reconstruction of the books and records of MBLLC based on its banking records, Boyce handwritten notes in the check book ledger, and the financial transactions set forth therein.

296.     On April 17, 2018, upon information and belief, defendant Boyce provided CASH [U.S. currency] to the Debtor in the amount of $200,000.

297.     The ledger to the MBLLC bank book provides Boyce handwriting showing that Boyce provided the Debtor with $760,000 for a return of $1,085,000.

| 4/16/2018 | DEP | David Viteri | MBLLC | $ 50,000.00 | | |
| 4/16/2018 | DEP | David Viteri | MBLLC | $250,000.00 | | |
| 4/16/2018 | DEP | Domenico Caruso | MBLLC | $ 60,000.00 | | |
| 4/16/2018 | DEP | Robert Picciurro | MBLLC | $ 40,000.00 | | |
| 4/17/2018 | 1007 | MBLLC | LNA Associates | | $400,000.00 | 4/16/18-6/16/18, $760,000-1,085,000 |

298.     Boyce, on behalf of MBLLC, provided the Debtor with a check in the amount of $400,000 and $160,000 and cash [U.S. currency] in the amount of $200,000.

299.     MBLLC, at the direction of Kenneth Boyce, transferred the MBLLC Transfers to the Defendants (collectively, the "Immediate or Mediate Transfers").

300.     MBLLC was a mere conduit to the Defendants.

301.     MBLLC never maintained control over the MBLLC Transfers and merely transferred the money received from the Debtor to the different Defendants.

302.    MBLLC should be collapsed as it was a mere fictitious entity used to transfer funds to the Defendants from the Debtor.

303.    The transfers to MBLLC by the Debtor were, in effect, transfers made directly to the Defendants.

304.    MBLLC was not the initial transferee of the MBLLC Transfers.

305.    The Defendants are the Initial Transferees of the MBLLC Transfers.

306.    The Defendants are Immediate Transferees of the MBLLC Transfers.

307.    The Defendants are the Mediate Transferees of the MBLLC Transfers.

308.    On June 17, 2020, Boyce filed a proof of claim against the Debtor's estate in the amount of $13,760,000 identified as Claim 69 (the "Boyce Claim").

309.    Boyce has no proof for the filing of the Boyce Claim.

310.    The Boyce Claim was fraudulently filed against the Debtor's estate.

311.    The Boyce Claim was sworn to by Boyce under penalty of perjury.

312.    As a result of the fraudulent scheme, the foregoing transactions between the Debtor and defendant MBLLC should be collapsed and each of the Defendants should be deemed to be initial transferees of the Total Transfers, or entities for whose benefit the Fraudulent Transfers were made, pursuant to Bankruptcy Code section 550(a)(1).

313.    Alternatively, if the Defendants are held not to be the initial transferees or beneficiaries under Bankruptcy Code section 550(a)(1), then each of the Defendants are immediate or mediate transferees under Bankruptcy Code section 550(a)(2).

314.    The Plaintiff/Trustee seeks the recovery of all sums received in excess of the investment made by each of the Defendants on a per deal basis, interest from the date of each of the Transfers, plus attorneys' fees and costs in connection with bringing the instant action.

## FIRST CLAIM FOR RELIEF AGAINST THE BOYCE DEFENDANTS
### (Injunctive Relief)

315.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "314" as if set forth fully herein.

316.    The funds comprising the Boyce Transfers constitute property of the Debtor's estate.

317.    The funds comprising the MBLLC Transfers constitute property of the Debtor's estate.

318.    The funds comprising the Cash Transfers constitute property of the Debtor's estate.

319.    The funds comprising the Total Transfers constitute property of the Debtor's estate.

320.    Plaintiff seeks a preliminary injunction and permanent injunction preventing the Boyce Defendants from transferring, hypothecating, encumbering or otherwise disposing of property of the Debtor's bankruptcy estate.

321.    Plaintiff seeks a preliminary injunction and permanent injunction preventing the Silverman Firm and Robert Shanahan, Esq. from transferring, hypothecating, encumbering or otherwise disposing of property of the Debtor's bankruptcy estate, or any money held in their respective escrow accounts.

322.    The Debtor's estate will suffer irreparable injury if the Boyce Defendants are permitted to retain, transfer, convey or otherwise dispose of property of the bankruptcy estate.

323.    To maintain the *status quo*, the balance of hardships weighs decidedly in favor of the granting of injunctive relief.

324.    Plaintiff is likely to prevail on the merits of his claims based upon the allegations set forth herein and the facts of this case.

325.    Pursuant to section 105 of the Bankruptcy Code, Bankruptcy Rule 7065, and Rule 65 of the Federal Rules of Civil Procedure, the Court may enjoin a party from proceeding with or continuing with, a course of conduct or practice which depletes, diminishes and/or effects property and/or diminishes the value of those assets or impairs the Plaintiff's recovery efforts.

326.    The Boyce Defendants will not be harmed by the issuance of a temporary injunction because the requested injunctive relief is a necessary step to return the parties to their position as of the day prior to meeting the Debtor.

327.    By reason of the foregoing, Plaintiff is entitled to an order and judgment granting a preliminary and permanent injunction, plus costs and other fees, or such other amounts as to be proven at trial.

**SECOND CLAIM FOR RELIEF**
**AGAINST THE BOYCE DEFENDANTS AND THEIR ASSETS**
**(Prejudgment Attachment and Seizure of Assets)**

328.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "327" as if set forth fully herein.

329.    The Huntington Property is property of the Debtor's estate.

330.    The funds used to pay the Huntington Mortgage payoff were obtained from the Debtor.

331.    The funds used to purchase the Florida Properties were obtained from the Debtor.

332.    The funds used to pay the Huntington Property's monthly mortgage were obtained from the Debtor.

333.    The funds paid over to the Fidelity Account came from the Debtor.

334.    The funds used to pay off the Boyce Defendants' car came from the Debtor.

335.    Plaintiff seeks an order seizing the Boyce Defendants' assets, including the Huntington Property, the Silverman RE Escrow, the Shanahan Escrow, any safe deposit boxes and the Fidelity Account.

336.    The Debtor's estate will suffer irreparable injury if the Boyce Defendants are permitted to retain, transfer, convey or otherwise dispose of property of the bankruptcy estate.

337.    To maintain the *status quo*, the balance of hardships weighs decidedly in favor of the granting of the relief requested herein.

338.    Plaintiff is likely to prevail on the merits of his claims based upon the allegations set forth herein and the facts of this case.

339.    Pursuant to section 105 of the Bankruptcy Code, Bankruptcy Rule 7064, and Rule 64 of the Federal Rules of Civil Procedure, the Court may seize, attach or replevin assets clearly marked or identified to the Plaintiff.

340.    The Boyce Defendants will not be harmed by a seizure or attachment as the acquisition of these assets came from stolen funds.

341.    By reason of the foregoing, Plaintiff is entitled to an order and judgment granting the relief requested herein, plus costs and other fees, or such other amounts as to be proven at trial.

### **THIRD CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**
**(Property of the Estate under 11 U.S.C. §§ 541 and 542)**

342.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "341" as if set forth fully herein.

343.    The Debtor's estate has a legal and equitable interest in the Boyce Transfers, MBLLC Transfers and the Immediate or Mediate Transfers.

344.    The Debtor's legal and equitable interest in the Boyce Transfers, MBLLC Transfers and the Immediate or Mediate Transfers is property of the Debtor's estate.

345.    Defendants have no right or entitlement to the Immediate Transfers or Mediate Transfers or the benefit thereof.

346.    The Huntington Property is property of the estate.

347.    The Florida Properties are property of the estate.

348.    The payments made on account of Boyce's personal assets are property of the estate.

349.    The Huntington Payoff is property of the estate.

350.    The Fidelity Account is property of the estate.

351.    The proceeds in the Silverman RE Escrow are property of the estate.

352.    The proceeds in the Shanahan Escrow are property of the estate.

353.    By reason of the foregoing, and in accordance with sections 541 and 542 of the Bankruptcy Code, Plaintiff is entitled to the entry of an order and judgment directing Defendants to turn over any and all property of the Debtor's estate in an amount as yet undetermined, but in no event believed to be less than $4,987,000, plus prejudgment interest thereon from the date of each of the Transfers identified herein as follows:

(a)    the MBLLC Transfers of $4,987,000;

(b)    the Boyce Transfers of $2,380,700;

(c)    the Kenny's Plumbing Transfers of $91,000;

(d)    the Caterina and Kenneth Transfers of $149,000;

(e)    the Fidelity Account money of $616,000;

(f)    the Cash Transfers of $650,000;

(g)     the Huntington Property in the amount of $1,125,000;

(h)     the Florida Properties in the amount of $650,000; and

(i)     the Miscellaneous Transfers of $150,000;

plus attorneys' fees, or such other amount as may be determined by the Court (the "Total Transfers").

354.    By reason of the foregoing, for a full and complete accounting of Defendants' use of the MBLLC Transfers, the Immediate or Mediate Transfers and the Total Transfers.

## FOURTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Accounting and Turnover of Property of the Estate under 11 U.S.C. §542)

355.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "354" as if set forth fully herein.

356.    The Debtor had a legal and equitable interest in the Total Transfers and Immediate or Mediate Transfers.

357.    The Debtor's legal and equitable interest in the Total Transfers and the Immediate or Mediate Transfers are property of the Debtor's estate.

358.    Defendants have retained each of the Total Transfers and Immediate or Mediate Transfers, or the benefit of the Total Transfers and Immediate or Mediate Transfers for which no consideration was provided to the Debtor.

359.    Each of the Total Transfers and Immediate or Mediate Transfers is a fraudulent conveyance, which the Trustee may avoid and recover pursuant to 11 U.S.C. §§ 544, 548, 550, 551 of the Bankruptcy Code.

360.    The Defendants each should be required to provide the Trustee with an accounting of all investments made to MBLLC, the name of the deal, copies of the front and back of all checks and a full and detailed accounting of their winnings.

361.    By reason of the foregoing, Plaintiff is entitled to the entry of an order and judgment against all Defendants under sections 105 and 542 of the Bankruptcy Code: (a) directing a turnover of the Total Transfers and the Immediate or Mediate Transfers as they apply to each Defendant; (b) for a full and complete accounting of Defendants use of the Total Transfers and Immediate or Mediate Transfers as they apply to each Defendant; (c) the reasons for Defendants retention of all funds paid by the Debtor or MBLLC to, or for the benefit of, Defendants during the period of January 1, 2018 through the present.

### FIFTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
**(Fraudulent Transfer Under 11 U.S.C. §548(a)(1)(A))**

362.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "361" as if set forth fully herein.

363.    The Total Transfers and Immediate or Mediate Transfers were made within two (2) years of the Filing Date.

364.    At the time of the Total Transfers, the Debtor knew, or should have known, that his creditors held claims against him.

365.    The Total Transfers were made by the Debtor with the intent to hinder, delay, or defraud his creditors.

366.    The Total Transfers constitutes a fraudulent transfer under section 548(a)(1)(A) of the Bankruptcy Code.

367.    By reason of the foregoing, Plaintiff is entitled to an order avoiding the Total Transfers and the Immediate or Mediate Transfers pursuant to sections 548(a)(1)(A), 550 and 551 of the Bankruptcy Code and a judgment against Defendants in an amount as yet undetermined, but in no event believed to be less than the Total Transfers, plus prejudgment

interest thereon attorneys' fees and costs, or such other amount as may be determined by the Court.

### SIXTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
**(Fraudulent Transfer Under 11 U.S.C. §548(a)(1)(B))**

368.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "367" as if set forth fully herein.

369.    The Total Transfers and Immediate or Mediate Transfers were made within two (2) years of the Petition Date.

370.    The Debtor received less than reasonably equivalent value in exchange for the Total Transfers and the Immediate or Mediate Transfers.

371.    The Debtor: (a) was insolvent on the date of each of the Total Transfers or became insolvent as a result of the Total Transfers; (b) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with it was an unreasonably small capital; or (c) intended to incur or believed that it would incur, debts beyond his ability to pay as they matured.

372.    At the time of the Total Transfers, the Debtor was insolvent, or had incurred, or was intending to incur, debts beyond his ability to pay them as they became due.

373.    At the time of the Total Transfers, the Debtor knew, or should have known, his creditors held claims against him.

374.    The Total Transfers constitutes a fraudulent transfer under section 548(a)(1)(B) of the Bankruptcy Code.

375.    By reason of the foregoing, Plaintiff is entitled to an order avoiding the Total Transfers pursuant to sections 548(a)(1)(B), 550 and 551 of the Bankruptcy Code and a judgment against Defendants in an amount as yet undetermined, but in no event believed to be

less than the Total Transfers, plus prejudgment interest thereon, attorneys fees and costs, or such other amount as may be determined by the Court.

<u>**SEVENTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**</u>
<u>**(Immediate and Mediate Transfers)**</u>
**(Fraudulent Transfer Under 11 U.S.C. §544, 550 and 551)**

376.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "375" as if set forth fully herein.

377.     At all relevant times there was and is at least one or more creditors who held and hold matured or unmatured unsecured claims against the Debtor that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

378.     The Debtor did not receive fair consideration for the Total Transfers, MBLLC Transfers or the Immediate or Mediate Transfers.

379.     The Debtor received less than reasonably equivalent value in exchange for the MBLLC Transfers or the Immediate or Mediate Transfers.

380.     At all times relevant, the Debtor: (a) was insolvent on the date of the Total Transfers or became insolvent as a result of the MBLLC Transfers; (b) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with it was an unreasonably small capital; or (c) intended to incur or believed that it would incur, debts beyond his ability to pay as they matured.

381.     At all times relevant, the Debtor was insolvent, or had incurred, or was intending to incur, debts beyond his ability to pay them as they became due.

382.     At the time of the Total Transfers and MBLLC Transfers, the Debtor knew, or should have known, his creditors held claims against him.

383.    By reason of the foregoing, Plaintiff is entitled to an order and judgment under sections 544(b), 550 and 551 of the Bankruptcy Code: (a) avoiding and preserving the Total Transfers, MBLLC Transfers and the Immediate or Mediate Transfers, (b) directing that the Total Transfers, MBLLC Transfers and the Immediate and Mediate Transfers be set aside, and (c) recovering the Total Transfers, MBLLC Transfers and the Immediate or Mediate Transfers, or the value thereof, from the Defendants for the benefit of the estate and to return to creditors of the estate, plus prejudgment interest thereon, attorneys fees and costs, or such other amount as may be determined by the Court.

### EIGHTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
**(Attorneys' Fees – DCL 276-a)**

384.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "383" as if set forth fully herein.

385.    The Total Transfers and MBLLC Transfers were made by the Debtor and received by Defendants with the actual intent to hinder, delay, or defraud present or future creditors of the Debtor.

386.    The Total Transfers and MBLLC Transfers constitute fraudulent transfers of the Debtor's assets in violation of section 276-a of the DCL.

387.    By reason of the foregoing, Plaintiff is entitled to a judgment against all Defendants, under section 276-a of the DCL, for reasonable attorneys' fees in an amount to be determined by the Court in connection with the prosecution of this action.

### NINTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
**(Unjust Enrichment under New York law)**

388.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "387" as if set forth fully herein.

389.    Defendants were enriched as a result of the Total Transfers and the Immediate or Mediate Transfers.

390.    The enrichment of Defendants was at the expense of the Debtor.

391.    The circumstances relating to the Total Transfers and Immediate or Mediate Transfers are such that equity and good conscience require Defendants to compensate the Debtor's estate.

392.    By reason of the foregoing, Plaintiff is entitled to an order and judgment against Defendants in an amount as yet undetermined, but in no event believed to be less than the Total Transfers plus prejudgment interest thereon, attorneys' fees and costs, and for such other amount as may be determined by the Court.

## TENTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Declaratory Judgment)
### (28 U.S.C. § 2201)

393.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "392" as if set forth fully herein.

394.    Upon information and belief, at all times relevant, the Defendant Boyce dominated and controlled MBLLC as if it's their own.

395.    At all times relevant, Defendant Boyce is the true owners of MBLLC as he treated MBLLC as his own.

396.    Defendant Boyce knew of the Debtor's arrest in July 2020.

397.    Upon information and belief, the Boyce Defendants knew or should have known the Debtor was operating a Ponzi scheme from much earlier than his arrest by virtue of the exorbitant returns on their investments and deals.

398.    Upon information and belief, Defendant Boyce was operating his own Ponzi scheme independent of the Debtor.

399.    By virtue of the domination and control of MBLLC, the Boyce Defendants misused MBLLC for the purpose of hindering, delaying and defrauding its creditors.

400.    As a result, the creditors of MBLLC have suffered a loss.

401.    Accordingly, under 28 U.S.C. § 2201, the Trustee is entitled to a judicial declaration that: (a) MBLLC is the alter ego of defendant Kenneth Boyce; and (b) all of the property held by them, including any of the Total Transfers they received, wherever situated, is property of which the ownership is legally and equitably vested in the Plaintiff for the benefit of the estate.

## ELEVENTH CLAIM FOR RELIEF
### (Piercing the Corporate Veil)

402.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "401" as if set forth fully herein.

403.    Defendant Boyce exercised total domination over MBLLC and the Total Transfers with respect to all money that was received from the Debtor.

404.    Upon information and belief, Defendant Boyce received a substantial personal benefit and a beneficial interest in the MBLLC Transfers and Immediate or Mediate Transfers.

405.    Defendant Boyce used MBLLC in order to pay the personal expenses of the Boyce Defendants which had nothing to do with MBLLC's alleged business.

406.    The Boyce Defendants treated MBLLC as their own.

407.    The Boyce Defendants used MBLLC as a mere conduit to make the Total Transfers.

408.    It is necessary to pierce corporate veil of MBLLC to achieve equity and hold each of the Boyce Defendants jointly and severally liable for all of the Total Transfers and the Immediate or Mediate Transfers.

409.    By reason of the foregoing, Plaintiff is entitled to an order and judgment piercing the corporate veil of MBLLC, and awarding damages in an amount to be determined at trial but in no event less than all of the debt and damages incurred by the Debtor's estate related to the Total Transfers, together with interest thereon, attorneys' fees and costs, and punitive damages in the amount of $1,000,000.

## TWELFTH CLAIM FOR RELIEF
### (Alter Ego)

410.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "409" as if set forth fully herein.

411.    At all times relevant, MBLLC did not observe corporate formalities.

412.    At all times relevant, MBLLC did not have a board of directors.

413.    At all times relevant, MBLLC did not have any executed and notarized operating agreement.

414.    At all times relevant, the Boyce Defendants did not treat themselves as separate and distinct from MBLLC.

415.    At all times relevant, MBLLC never displayed its own business discretion.

416.    At all times relevant, the Boyce Defendants had no other purpose but to receive the MBLLC Transfers and the Immediate or Mediate Transfers for their personal benefit.

417.    Upon information and belief, at all times relevant, the Boyce Defendants used MBLLC as a mere instrumentality to further the MBLLC Transfers to or for their benefit.

418.    At all times relevant, Defendant Boyce exercised complete control and domination of the financial decisions of MBLLC, including making certain transfers to the Boyce Defendants and others.

419.    Defendant MBLLC is the alter ego of defendant Kenneth Boyce.

420.    By reason of the foregoing, Plaintiff is entitled to an order and judgment declaring that MBLLC is the alter ego of the Kenneth Boyce.

<u>**THIRTEENTH CLAIM FOR RELIEF AGAINST BOYCE DEFENDANTS**</u>
**(Breach of Fiduciary Duty)**

421.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "420" as if set forth fully herein.

422.    At all times relevant, defendant Kenneth Boyce was the managing member and/or otherwise person in control of MBLLC.

423.    Defendant Boyce made the business decisions of MBLLC.

424.    Defendant Boyce exercised dominion and control over MBLLC.

425.    Pursuant to the New York limited liability action, Defendant Boyce owed MBLLC a fiduciary duty of utmost good faith, care and loyalty in its dealings with the Debtor, the Defendants and MBLLC.

426.    MBLLC was insolvent or rendered insolvent or severely undercapitalized from inception and during all times the Total Transfers, MBLLC Transfers and Immediate or Mediate Transfers occurred.

427.    MBLLC owed a duty to its unsecured creditors of utmost care and good faith in preserving the assets for payment of the just debts as they matured.

428.    The Debtor is a creditor of MBLLC as a result of the MBLLC Transfers.

429.    Defendant Boyce breached his fiduciary duty to MBLLC and its creditors by allowing, directing and authorizing the diversion, transfer and misappropriation of MBLLC's assets for his personal benefit and to the detriment of MBLLC and its creditors.

430.    Defendant Boyce misconduct  includes, but is not limited to, authorizing and directing payments to or for his personal benefit, not segregating money from investors of MBLLC, paying fictitious expenses, paying personal expenses of the Huntington Property and not conducting due diligence or identifying the red flags which would have prevented the Defendants investments into MBLLC.

431.    Defendant Boyce breached his fiduciary duty to its creditors by allowing, authorizing and diverting MBLLC's assets for his own personal benefit.

432.    Defendant Boyce breached his fiduciary duty to MBLLC and its creditors by failing to remain disinterested.

433.    Boyce Defendant breached his fiduciary duty to MBLLC and its creditors by causing the continued dissipation and diversion of MBLLC's assets for his own personal benefit.

434.    As a direct result of the respective misconduct and breaches occurred and failure to act in accordance with the duties imposed upon him by relevant law, MBLLC and its creditors have been damaged because the assets of MBLLC were substantially depleted and/or diverted to or for the benefit of the Boyce Defendants or that of various insiders and family members of theirs, rather than the creditors of MBLLC.

435.    By reason of the foregoing, Plaintiff is entitled to a judgment against the Boyce Defendants, jointly and severally, pursuant to NY LLC Act §§ 401, 408, 409 and 411, in an amount as yet undetermined but in no event less than $4,987,000, plus punitive damages in the

amount of $1,000,000, interest thereon, attorneys' fees and costs, or such other amount as may be determined by the Court.

## FOURTEENTH CLAIM FOR RELIEF AGAINST BOYCE DEFENDANTS
### (Improper Management of MBLLC)

436.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "435" as if set forth fully herein.

437.    Upon information and belief, the MBLLC Transfers and other transfers were made in contravention to NY LLC Act § 401, 408, 409, and 411 and constitute management breaches including improper dividends as they were paid to, or on behalf of, Boyce Defendants without regard to the financial condition of MBLLC at the time of the transfers.

438.    By reason of the foregoing, Plaintiff is entitled to judgment against the Boyce Defendants in an amount as yet undetermined, but in no event less than $4,987,000, plus punitive damages in the amount of $1,000,000, interest thereon from the date of each of the transfers, attorneys' fees and costs, or such other amount as may be determined by the Court.

## FIFTEENTH CLAIM FOR RELIEF AGAINST BOYCE DEFENDANTS
### (Self-Dealing, Breach of Duty of Loyalty and Duty of Care)

439.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "438" as if set forth fully herein.

440.    Defendant Boyce owed MBLLC and its creditors a duty of loyalty, which duty required the Defendant Boyce to promote the interests of MBLLC rather than their own personal interests.

441.    By engaging in the various forms of misconduct identified herein, Defendant Boyce breached his duty of loyalty to MBLLC and its creditors by promoting his own interests at the expense of the interests of MBLLC and its creditors.

442.    By engaging in the various forms of misconduct identified herein, Defendant Boyce breached his duty of loyalty to MBLLC and its creditors by engaging in self-dealing, and by utilizing his respective position of trust with MBLLC's creditors to obtain personal profit or advantage.

443.    The Boyce Defendants were each unjustly enriched by the breach of duty of loyalty of Defendant Boyce to MBLLC and its creditors.

444.    Defendant Boyce actions have damaged MBLLC and its creditors.

445.    Defendant Boyce breached his fiduciary duty of loyalty and should be required to disgorge any and all of the Boyce Transfers made to or for his benefit by or form MBLLC.

446.    As a result of Defendant Boyce's breach of duty of loyalty to MBLLC and its creditors, Plaintiff is entitled to recover from the Boyce Defendants a judgment in an amount as yet undetermined, but in no event less than $4,987,000, plus punitive damages in the amount of $1,000,000, interest thereon, attorneys' fees, and costs, and such other amounts as may be determined by the Court.

## SIXTEENTH CLAIM FOR RELIEF AGAINST KENNETH BOYCE
### (To Disallow Claims Pursuant to 11 U.S.C. § 502(d) and (j))

447.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "446" as if fully set forth herein.

448.    Defendant Boyce was the initial transferee of the Total Transfers, or the immediate or mediate transferee of such initial transferee of the person for whose benefit the Total Transfers were made.

449.    Defendant Boyce  has not paid the amount of the Boyce Transfers or the Total Transfers or turned over such property for which Defendant Kenneth Boyce is liable under section 550 of the Bankruptcy Code.

450.    Pursuant to Bankruptcy Code section 502(d), any claims of Defendant Kenneth Boyce against the Debtor, including the Boyce Claim, must be disallowed until such time as the Boyce Defendants pay to Plaintiff an amount equal to the aggregate amount of the Boyce Transfers and the Total Transfers, together with interest thereon.

451.    Pursuant to Bankruptcy Code section 502(j), any and all previously allowed claims of Defendant Kenneth Boyce against the Debtor, including any and all claims assigned by Defendant Kenneth Boyce, must be reconsidered and disallowed until such time as Defendant Kenneth Boyce pays to Plaintiff the amount equal to the aggregate amount of the Boyce Transfers and the Total Transfers with interest thereon.

## SEVENTEENTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Fraudulent Transfer under DCL)

452.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "451" as if set forth fully herein.

453.    At the time of each of the Total Transfers, the Debtor was insolvent or was thereafter rendered insolvent.

454.    Upon information and belief, the Debtor did not receive fair consideration in exchange for the Total Transfers.

455.    The Transfers constitute fraudulent transfers in violation of section 273 of the DCL.

456.    Under sections 544(b) and 550 of the Bankruptcy Code, and section 273 of the DCL, the Plaintiff may avoid the Total Transfers.

457.    By reason of the foregoing, Plaintiff is entitled to an order avoiding the Total Transfers pursuant to section 273 of the DCL and judgment against all Defendants in an amount as yet undetermined, but in no event believed to be less than $4,987,000, plus prejudgment

interest thereon from the date of each of the Total Transfers, attorneys' fees and costs, or such other amount as may be determined by the Court, and for a full and complete accounting of Defendant's use of the Transfers.

### EIGHTEENTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
#### (Fraudulent Transfer under DCL)

458.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "457" as if set forth fully herein.

459.    At the time of each of the Total Transfers, the Debtor was engaged in or was about to engage in a business or transaction for which the property remaining in his hands after the Total Transfers was an unreasonably small capital.

460.    Upon information and belief, the Debtor did not receive fair consideration in exchange for the Total Transfers.

461.    The Total Transfers constitute fraudulent transfers in violation of section 274 of the DCL.

462.    Under sections 544(b) and 550 of the Bankruptcy Code, and section 274 of the DCL, Plaintiff may avoid the Total Transfers.

463.    By reason of the foregoing, Plaintiff is entitled to an order avoiding the Total Transfers pursuant to section 274 of the DCL and judgment against all Defendants in an amount as yet undetermined, but in no event believed to be less than $4,987,000, plus prejudgment interest thereon from the date of each of the Total Transfers, attorneys' fees and costs, or such other amount as may be determined by the Court, and for a full and complete accounting of Defendant's use of the Total Transfers.

### NINETEENTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
#### (Fraudulent Transfer under DCL)

464.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "463" as if set forth fully herein.

465.    At the time of each of the Total Transfers, the Debtor intended or believed that he would incur debts beyond his ability to pay as they matured.

466.    The Debtor did not receive fair consideration in exchange for the Total Transfers.

467.    The Total Transfers constitute fraudulent transfers in violation of section 275 of the DCL.

468.    Under sections 544(b) and 550 of the Bankruptcy Code, and section 275 of the DCL, Plaintiff may avoid the Total Transfers.

469.    By reason of the foregoing, Plaintiff is entitled to an order avoiding the Total Transfers pursuant to section 275 of the DCL and judgment against Defendant in an amount as yet undetermined, but in no event believed to be less than $4,987,000, plus prejudgment interest thereon from the date of each of the Total Transfers, attorneys' fees and costs, or such other amount as may be determined by the Court, and for a full and complete accounting of Defendant's use of the Total Transfers.

### TWENTIETH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
#### (Fraudulent Transfer under DCL)

470.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "469" as if set forth fully herein.

471.    The Total Transfers were made by the Debtor with the actual intent to hinder, delay, or defraud present or future creditors of the Debtor in violation of section 276 of the DCL.

472.    Under sections 544(b) and 550 of the Bankruptcy Code, and section 276 of the DCL, Plaintiff may avoid the Total Transfers.

473.    By reason of the foregoing, Plaintiff is entitled to an order avoiding the Total Transfers pursuant to section 276 of the DCL and judgment against Defendant in an amount as yet undetermined, but in no event believed to be less than $4,987,000, plus prejudgment interest thereon from the date of each of the Total Transfers, attorneys' fees and costs, or such other amount as may be determined by the Court, and for a full and complete accounting of Defendant's use of the Total Transfers.

**WHEREFORE**, Plaintiff demands judgment on his claims for relief against Defendants as follows:

    i.    On his First Claim for Relief, an order and judgment granting a preliminary and permanent injunction, plus costs and other fees, or such other amounts as to be proven at trial;

    ii.    On his Second Claim for Relief, an order and judgment granting the relief requested herein, plus costs and other fees, or such other amounts as to be proven at trial;

    iii.    on his Third Claim For Relief, for a full and complete accounting of Defendants' use of the MBLLC Transfers, the Immediate or Mediate Transfers and the Total Transfers;

    iv.    on his Fourth Claim For Relief, an order and judgment against all Defendants under sections 105 and 542 of the Bankruptcy Code: (a) directing a turnover of the Total Transfers and the Immediate or Mediate Transfers as they apply to each Defendant; (b) for a full and complete accounting of Defendants use of the Total Transfers and Immediate or Mediate Transfers as they apply to each Defendant; (c) the reasons for Defendants retention of all funds paid by the Debtor or MBLLC to, or for the benefit of, Defendants during the period of January 1, 2018 through the present

    v.    on his Fifth Claim For Relief, an order avoiding the Total Transfers and the Immediate or Mediate Transfers pursuant to sections 548(a)(1)(A), 550 and 551 of the Bankruptcy Code and a judgment against Defendants in an amount as yet undetermined, but in no event believed to be less than the Total Transfers, plus prejudgment interest thereon attorneys' fees and costs, or such other amount as may be determined by the Court;

vi.     on his Sixth Claim For Relief, an order avoiding the Total Transfers pursuant to sections 548(a)(1)(B), 550 and 551 of the Bankruptcy Code and a judgment against Defendants in an amount as yet undetermined, but in no event believed to be less than the Total Transfers, plus prejudgment interest thereon, attorneys fees and costs, or such other amount as may be determined by the Court;

vii.    on his Seventh Claim For Relief, an order and judgment under sections 544(b), 550 and 551 of the Bankruptcy Code: (a) avoiding and preserving the Total Transfers, MBLLC Transfers and the Immediate or Mediate Transfers, (b) directing that the Total Transfers, MBLLC Transfers and the Immediate and Mediate Transfers be set aside, and (c) recovering the Total Transfers, MBLLC Transfers and the Immediate or Mediate Transfers, or the value thereof, from the Defendants for the benefit of the estate and to return to creditors of the estate, plus prejudgment interest thereon, attorneys fees and costs, or such other amount as may be determined by the Court;

viii.   on his Eighth Claim For Relief, a judgment against all Defendants, under section 276-a of the DCL, for reasonable attorneys' fees in an amount to be determined by the Court in connection with the prosecution of this action;

ix.     on his Ninth Claim For Relief, an order and judgment against Defendants in an amount as yet undetermined, but in no event believed to be less than the Total Transfers plus prejudgment interest thereon, attorneys' fees and costs, and for such other amount as may be determined by the Court;

x.      on his Tenth Claim For Relief, to a judicial declaration that: (a) MBLLC is the alter ego of defendant Kenneth Boyce; and (b) all of the property held by them, including any of the Total Transfers they received, wherever situated, is property of which the ownership is legally and equitably vested in the Plaintiff for the benefit of the estate;

xi.     on his Eleventh Claim For Relief, an order and judgment piercing the corporate veil of MBLLC, and awarding damages in an amount to be determined at trial but in no event less than all of the debt and damages incurred by the Debtor's estate related to the Total Transfers, together with interest thereon, attorneys' fees and costs, and punitive damages in the amount of $1,000,000;

xii.    on his Twelfth Claim For Relief, an order and judgment declaring that MBLLC is the alter ego of the Kenneth Boyce;

xiii.   on his Thirteenth Claim For Relief, a judgment against the Boyce Defendants, jointly and severally, pursuant to NY LLC Act §§ 401, 408, 409 and 411, in an amount as yet undetermined but in no event less than $4,987,000, plus punitive damages in the amount of $1,000,000, interest thereon, attorneys' fees and costs, or such other amount as may be determined by the Court;

xiv.      on his Fourteenth Claim For Relief, judgment against the Boyce Defendants in an amount as yet undetermined, but in no event less than $4,987,000, plus punitive damages in the amount of $1,000,000, interest thereon from the date of each of the transfers, attorneys' fees and costs, or such other amount as may be determined by the Court;

xv.      on his Fifteenth Claim For Relief, a judgment in an amount as yet undetermined, but in no event less than $4,987,000, plus punitive damages in the amount of $1,000,000, interest thereon, attorneys' fees, and costs, and such other amounts as may be determined by the Court;

xvi.      on his Sixteenth Claim For Relief, any and all previously allowed claims of Defendant Kenneth Boyce against the Debtor, including any and all claims assigned by Defendant Kenneth Boyce, must be reconsidered and disallowed until such time as Defendant Kenneth Boyce pays to Plaintiff the amount equal to the aggregate amount of the Boyce Transfers and the Total Transfers with interest thereon;

xvii.      on his Eighteenth Claim For Relief, an order avoiding the Total Transfers pursuant to section 274 of the DCL and judgment against all Defendants in an amount as yet undetermined, but in no event believed to be less than $4,987,000, plus prejudgment interest thereon from the date of each of the Total Transfers, attorneys' fees and costs, or such other amount as may be determined by the Court, and for a full and complete accounting of Defendant's use of the Total Transfers;

xviii.      on his Nineteenth Claim For Relief, an order avoiding the Total Transfers pursuant to section 275 of the DCL and judgment against Defendant in an amount as yet undetermined, but in no event believed to be less than $4,987,000, plus prejudgment interest thereon from the date of each of the Total Transfers, attorneys' fees and costs, or such other amount as may be determined by the Court, and for a full and complete accounting of Defendant's use of the Total Transfers;

xix.      on his Twentieth Claim For Relief, an order avoiding the Total Transfers pursuant to section 276 of the DCL and judgment against Defendant in an amount as yet undetermined, but in no event believed to be less than $4,987,000, plus prejudgment interest thereon from the date of each of the Total Transfers, attorneys' fees and costs, or such other amount as may be determined by the Court, and for a full and complete accounting of Defendant's use of the Total Transfers; and

xx.     for all costs, disbursements and expenses, including attorneys' fees, in connection
with this action, together with such other, further and different relief as this Court
may deem just and proper.

Dated: April  20, 2021
Wantagh, New York

**LaMONICA HERBST & MANISCALCO, LLP**
Special Litigation Counsel to Plaintiff R. Kenneth Barnard,
as Trustee

By:     _s/Joseph S. Maniscalco_
Joseph S. Maniscalco, Esq.
Melanie A. FitzGerald, Esq.
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500